Richard H. FIEDLER, et al., Respondents,

v.

Gerard D. SPOELHOF, M.D., Appellant.

No. C2–91–1422.

Court of Appeals of Minnesota.

March 31, 1992.

Review Denied June 10, 1992.

William M. Bradt, Hansen, Dordell, Bradt, Odlaug & Bradt, St. Paul, for respondents.

James A. Wade, Faye M. Witt, Johnson, Killen, Thibodeau & Seiler, P.A., Duluth, for appellant.

Considered and decided by SCHUMACHER, P.J., and KALITOWSKI and STONE *, JJ.

---

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment

## OPINION

KALITOWSKI, Judge.

Respondent Richard Fiedler brought a medical malpractice action in state court against appellant Dr. Gerard Spoelhof. Respondent also brought a negligence action against the U.S. government in federal court. Both actions were based on allegedly negligent care respondent received while an inmate in a federal prison camp. Respondent filed a motion to remove the state action to federal court and appellant, in a stipulation submitted to the court, agreed to removal of the state action. The federal court denied the removal motion and subsequently dismissed the action against the government. The state court action resulted in a verdict for respondent. Appellant contends that the trial court erred in admitting the testimony of respondent's expert witness and in refusing to limit his liability to the portion of the verdict attributable to his negligence.

## FACTS

In 1986, respondent was an inmate of the Federal Prison Camp in Duluth. Appellant was a family practitioner and clinical director of the health clinic at the prison. As clinical director, appellant was responsible for making decisions regarding inmate health care and treatment.

During his intake screening in March of 1986, respondent stated that he had previously experienced intermittent chest pains. The results of an EKG performed on respondent were normal. On June 25, 1986, respondent went to the prison clinic complaining of chest pains. Appellant examined respondent the next day, instructed him to quit smoking, prescribed nitroglycerin and ordered an exercise stress test. Respondent later underwent the stress test but the results of the test neither confirmed nor ruled out heart disease because respondent failed to reach his target heart rate.

pursuant to Minn. Const. art. VI, § 2.

On July 28, respondent again went to the clinic complaining of chest pains. His EKG results were normal. Appellant ordered a chest x-ray, prescribed Procardia and put respondent on "idle" for 24 hours. At a follow-up visit the next day, respondent reported slight chest tightening and a headache. Respondent again returned to the clinic on the following day complaining of chest pains. After an examination, appellant told respondent to come back on August 1.

Appellant's written treatment plan for respondent on August 1 stated that respondent needed a cardiology evaluation, a possible angiogram, and an ears, nose and throat evaluation. Appellant recommended that respondent be transferred to a medical facility "as soon as possible" and ordered convalescence until the transfer. Appellant did not specify a timetable for the proposed transfer in his records. He chose to use the routine transfer procedure for respondent's transfer rather than an emergency transfer to a hospital or a direct transfer to a prison medical facility arranged through the director of the facility. Appellant had used the routine transfer procedure in the past and had experienced varying time delays with the transfers. He testified, however, that he spoke with a prison official about respondent's transfer and expressed a desire that the transfer occur within a week or two.

Respondent suffered a myocardial infarction in prison on August 14. He was taken by ambulance to a local hospital and then transferred to another hospital where an angiogram and angioplasty were performed. Respondent brought a medical malpractice action against appellant in state court in July of 1988. He subsequently initiated an action against the U.S. government under the Federal Tort Claims Act alleging negligence on the part of a prison official. Respondent's actions essentially were based on the failure of appellant and the prison officials to promptly transfer him to a medical facility. The federal court denied respondent's motion to remove the state action to federal court and join it with the federal action. The state court continued the state action until resolution of the federal action. In March of 1991, the federal court dismissed the action against the U.S. government, finding that the prison official was not negligent as a matter of law.

A jury trial was held in the state action in April of 1991. Respondent offered the videotaped deposition of Dr. David Benditt, a cardiologist. Dr. Benditt testified about his cardiology training and his medical qualifications and experience. He indicated that he had not studied family practice or treated inmates in a prison setting but was familiar with the standard of care exercised by family practitioners because family practitioners refer patients to him and he often discusses patient treatment with family practice physicians. Dr. Benditt stated that in his opinion, a family physician faced with a patient who had several chest pain episodes during a short time period would have promptly sent the patient to a cardiologist. Dr. Benditt indicated that a family physician likely would refer a patient with a cardiac problem to a cardiologist within a day or two.

Appellant testified at trial about his training and experience as a family practitioner and prison physician. He stated that there are special considerations involved when treating prison inmates including the need for security and the possibility that the prisoner is seeking a transfer to another facility for reasons unrelated to health care. Appellant also presented the testimony of two other physicians who gave their opinion that appellant had not departed from the generally recognized standard of care in treating respondent.

Appellant's primary defense at trial was that the U.S. government was the most culpable tortfeasor. He requested that the government be included in the apportionment of fault on the jury's special verdict form. The trial court granted this request. The jury returned a special verdict awarding respondent damages totalling $105,000. The jury apportioned negligence as follows: appellant 50%, the U.S. government 45%, and respondent 5%. The trial court issued an order for judgment against appellant in the sum of $99,750. Appellant subsequently moved for judgment notwithstanding the verdict or a new trial. He also moved to

amend the judgment to reflect the absence of joint liability between himself and the government. The court denied appellant's motions and this appeal followed.

### ISSUES

I. Did the trial court err in admitting the testimony of respondent's expert witness?

II. Did the trial court err in refusing to limit appellant's liability to the portion of the verdict attributable to his negligence?

### ANALYSIS

### I.

 Appellant argues that Dr. Benditt, respondent's expert witness, was incompetent to testify on the appropriate standard of care. The determination of witness competency is a fact question within the discretionary province of the trial court. *Ouellette v. Subak*, 391 N.W.2d 810, 816 (Minn.1986). On appeal, a reviewing court will not reverse the trial court's ruling unless it is based on an erroneous view of the law or clearly is not justified by the evidence. *Id.; Cornfeldt v. Tongen*, 262 N.W.2d 684, 692 (Minn.1977).

 In determining the competency of an expert witness, a trial court should examine both the witness' scientific knowledge and the witness' practical experience with the subject matter of the testimony. *See Reinhardt v. Colton*, 337 N.W.2d 88, 93 (Minn.1983). Theoretical expertise is not sufficient. *Lundgren v. Eustermann*, 370 N.W.2d 877, 880 (Minn.1985). Instead, the witness must possess some practical knowledge or experience in the area of his or her testimony. *Id.*

Appellant contends that Dr. Benditt did not have the requisite practical knowledge to testify on the appropriate standard of care and whether appellant departed from that standard. He argues that Dr. Benditt, a cardiologist, is inexperienced in the field of family practice and unqualified to testify about medical treatment in a prison setting. Appellant maintains that Dr. Benditt's lack of experience as a family practitioner and prison physician made him incompetent to testify.

The record adequately supports the trial court's decision to allow Dr. Benditt's testimony. The fact that Dr. Benditt does not practice the same specialty as appellant is not sufficient reason to exclude his testimony. *See Haas v. Gaviser*, 348 N.W.2d 406, 408 (Minn.App.1984) (trial court improperly excluded expert medical testimony because witness was not in same specialty as defendant). The record indicates that Dr. Benditt has experience with and knowledge of the standard of care exercised by family practitioners. Although Dr. Benditt was never a prison physician, this factor does not render him incompetent to testify but instead goes to the weight of his testimony. The record indicates that through cross-examination the jury was made well aware of the limits of Dr. Benditt's experience. Under these circumstances, we conclude that the trial court did not err in allowing Dr. Benditt's testimony.

### II.

 Appellant argues that his liability should be reduced to 50% of the total verdict because the jury found him to be only 50% negligent. He claims that equitable considerations weigh against applying traditional joint and several liability principles and holding him responsible for respondent's total damages. The trial court rejected this argument and refused to limit appellant's liability.

In general, parties whose negligence concurs to cause an injury are jointly and severally liable for the plaintiff's total award. *Maday v. Yellow Taxi Co.*, 311 N.W.2d 849, 850 (Minn.1981); *see* Minn. Stat. § 604.02, subd. 1 (1990). Appellant argues that this principle should not apply in the instant case. He relies upon *Hart v. Cessna Aircraft Co.*, 276 N.W.2d 166 (Minn.1979) to support his position.

In *Hart*, the widow of a man killed in a plane crash brought a negligence action against the pilot of the plane, and the pilot was found not negligent. The plaintiff then brought a negligence action against the manufacturer of the plane who im-

pleaded the pilot seeking contribution. The *Hart* court, relying on established precedent, held that the manufacturer could not claim contribution from the pilot because the pilot had been found not liable to the plaintiff in the earlier action. *Id.* at 168.

The court went on to rule that equitable principles weighed in favor of granting the manufacturer some relief. The court stated that if a plaintiff elects to sue the defendants "piecemeal," the plaintiff should bear the risk imposed by using that procedure. *Id.* at 169. The court noted that the manufacturer had no notice of the lawsuit against the pilot. *Id.* The court concluded that the manufacturer would be liable to the plaintiff for only the portion of the negligence attributable to it. *Id.* at 170.

Appellant asserts that the equitable considerations present in *Hart* are present in the instant case and require that his liability be limited to the percentage of the damages attributable to his negligence. The trial court disagreed, finding *Hart* factually distinguishable. The court noted that in *Hart*, the joint tortfeasor had no notice of the plaintiff's first suit, the plaintiff elected to sue the defendants separately and pursue the second defendant only after losing its action against the first, and both actions were brought in state court. The trial court determined that these factual distinctions made *Hart* inapplicable.

We agree with the trial court that the equitable remedy fashioned in *Hart* does not apply here. The facts of this case differ significantly from those in *Hart*. Unlike the plaintiff in *Hart*, respondent did not elect to sue appellant and the government piecemeal but instead sought to join the two actions. He made a motion to remove the state action to federal court and join it with the federal action, but the court denied the motion. In addition, appellant and the government had a contractual relationship and could have determined their rights and obligations with respect to each other. Finally, respondent commenced suit against appellant before initiating his action against the government, and appellant had notice of respondent's suit against the government. We believe these factors make this case distinguishable from *Hart*. The trial court therefore did not err in finding *Hart* inapplicable and refusing to limit appellant's liability.

### DECISION

The trial court did not err in admitting the testimony of respondent's expert witness and in refusing to limit appellant's liability.

Affirmed.