**Jeffrey KOCH, Respondent (C9–95–891), Appellant (C5–95–905),**

v.

**MORK CLINIC, P.A., et al., Appellants (C9–95–891), Respondents (C5–95–905),**

**Timothy J. Regan, et al., Defendants (C9–95–891).**

Nos. C5–95–905, C9–95–891.

Court of Appeals of Minnesota.

Nov. 14, 1995.

Review Denied Jan. 12, 1996.

Brad C. Eggen, Minneapolis, for Jeffrey Koch.

Charles E. Lundberg, Kathryn H. Davis, Mark R. Whitmore, Bassford, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for Mork Clinic, P.A.

Timothy G. Bailey, Minnesota Trial Lawyers Association, Minneapolis, for Amicus Curiae.

Considered and decided by PARKER, P.J., and LANSING and FORSBERG, JJ.*

## OPINION

LANSING, Judge.

This is a consolidated appeal from a jury verdict finding a treating physician and his employing clinic liable for medical malpractice in their negligent failure to timely diagnose a brain infection. The district court was within its discretion in allowing two consulting physicians to testify as experts, in its evidentiary and procedural rulings, and in denying remittitur. Because ERISA preempts Minn.Stat. § 548.36, the collateral source offset should be reinstated, and we affirm the judgment as modified.

## FACTS

The jury returned a verdict finding Dr. William Davidson causally negligent for his failure to timely diagnose Jeffrey Koch's brain abscesses. The district court entered judgment against Dr. Davidson and the Mork Clinic (collectively the clinic) for $1,390,914. The final judgment reflected a $119,826 collateral source offset of payments from Koch's ERISA plan.

Koch's witnesses included Dr. John Fodden and Dr. James Martins who both testified as medical experts. Dr. Fodden was board certified in pathology and Canadian certified in internal medicine. He consulted with general practitioners and other internal medicine specialists in diagnosing influenza and brain cerebritis, including about ten consultations on brain abscesses. In 1988–1989 when Dr. Davidson treated Koch, Dr. Fodden was a coroner-physician for two counties, consulting with internal specialists. Dr. Martins was board certified in family practice. He has treated patients and consulted other doctors diagnosing and treating influenza and brain cerebritis. Dr. Martins assisted a neurologist on about three brain abscesses. In 1988–1989 he treated patients in his home as a family practitioner.

The district court found Dr. Fodden and Dr. Martins competent to testify as experts. It granted the clinic's collateral source motion and reduced Koch's past medical expenses award by the $119,826 paid by Koch's ERISA benefits contract with his employer. The clinic appeals the denial of its posttrial motions and Koch appeals the collateral source offset.

## ISSUES

I. Did Dr. Fodden and Dr. Martins possess sufficient practical experience to testify as medical experts?

II. Did the district court err in its evidentiary or procedural rulings or in denying remittitur?

III. Does ERISA preempt Minn.Stat. § 548.36 as applied to payments from an ERISA plan?

## ANALYSIS

### I

■ Determining expert witness competency and foundation for expert testimony "lie[s] within the sound discretion" of the district court. *Benson v. Northern Gopher Enters.*, 455 N.W.2d 444, 445–46 (Minn.1990). Although we might reach a different conclusion, we must affirm the district court "absent a clear abuse of discretion." *Id.*

■ A witness qualified as an expert by "knowledge, skill, experience, training or education" may testify to assist the jury. Minn.R.Evid. 702. Expert witnesses in a medical malpractice action must have both "sufficient scientific knowledge" and "some practical experience" with the subject matter of the proposed testimony. *Cornfeldt v. Tongen*, 262 N.W.2d 684, 692 (Minn.1977). But a medical expert need not have a specialty, experience, or a position identical to a medical defendant. *Fiedler v. Spoelhof*, 483 N.W.2d 486, 489 (Minn.App.1992), *review denied* (Minn. June 10, 1992).

■ An expert witness unfamiliar with a procedure cannot testify about it. *See, e.g.,*

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

*Williams v. Wadsworth,* 503 N.W.2d 120, 124–25 (Minn.1993) (excluding cardiologist's testimony about ordering a procedure when he stated he did not know about its current use); *Lundgren v. Eustermann,* 370 N.W.2d 877, 880 (Minn.1985) (holding psychologist who never prescribed a drug or consulted with others was incompetent to testify about standard of care for prescribing it).

■ Consultations with treating physicians may constitute practical experience. *See, e.g., Cornfeldt,* 262 N.W.2d at 693 (holding expert's consultations with surgeons enabled him to testify about the suitability of a patient for surgery); *Fiedler,* 483 N.W.2d at 489 (holding cardiologist who handled referrals from and discussed treatment with family practitioners may testify about standard of care for a family practitioner working in a prison).

■ Both Dr. Fodden and Dr. Martins had sufficient practical experience in diagnosing brain abscesses to qualify as medical experts. Although brain abscesses are rare, Dr. Fodden had participated in the diagnosis of ten brain abscesses and Dr. Martins in three cases. It is true that Dr. Fodden has not worked as a clinician since 1944. But he continued to consult with specialists and general physicians, including his work in 1988–1989. Dr. Martins took continuing education courses and practiced family medicine out of his home in 1988–1989. Both doctors had experience analyzing CT Scan reports, knew the symptoms and progression of brain abscesses, and were familiar with current literature on the disease. The district court did not abuse its discretion in allowing Dr. Fodden and Dr. Martins to testify as medical experts.

## II

The clinic raises three additional claims relating to the trial. The clinic argues the district court erred in admitting testimony about a textbook published after Koch's 1988–1989 diagnosis, in its jury instructions, and in denying remittitur.

■ First, the clinic argues the district court committed reversible error by allowing Koch's experts to testify about information in the 1992 edition of *Cecil's Textbook of Medicine* when Koch's diagnosis occurred in 1988–1989. Evidentiary rulings are upheld absent an abuse of discretion. *Uselman v. Uselman,* 464 N.W.2d 130, 138 (Minn.1990). A party must demonstrate prejudicial error from the evidentiary ruling. *Id.*

■ Dr. Fodden identified the textbook as a learned treatise and used it to help explain the progression of brain abscesses. He also testified that this basic information was available in 1988 from other sources, and one of the clinic's experts agreed. Because this fundamental information was available at the time of Koch's diagnosis, allowing the medical experts to testify using the 1992 edition of the textbook was neither an abuse of discretion nor prejudicial.

Second, the clinic argues that the district court erred in its jury instructions by: (1) denying an instruction that the jury must determine a defendant doctor's required skill and learning only from expert testimony (CIVJIG 425), (2) denying an instruction that expert testimony must establish causation (CIVJIG 140), and (3) giving an instruction on the duty to refer a patient to a specialist (CIVJIG 426.1). 4 *Minnesota Practice,* CIVJIG 140, 425, 426.1 (1986 & Supp.1992).

■ A reviewing court will not reverse the denial of a new trial when the jury instructions "fairly and correctly state the applicable law * * *." *Alevizos v. Metropolitan Airports Comm'n,* 452 N.W.2d 492, 501 (Minn.App.1990), *review denied* (Minn. May 11, 1990). The jury instructions should be reviewed in their entirety and from a practical approach. *Manion v. Tweedy,* 257 Minn. 59, 64, 100 N.W.2d 124, 128 (Minn. 1959).

■ The district court excluded the clinic's proposed modifications of CIVJIG 425 and CIVJIG 140 to avoid overemphasis of expert opinion testimony and the clinic's case. The district court instead provided the jury with two standard instructions on how to evaluate expert witness testimony. 4 *Minnesota Practice,* CIVJIG 21, 22 (1986). Both instructed the jury to weigh expert opinions by considering the expert's edu-

cation, reasoning, sources of information, and factors of witness credibility. *Id.*

The district court also added an instruction on the duty to refer, with several modifications that favored the clinic. 4 *Minnesota Practice,* CIVJIG 426.1. The instruction excluded a statement that if a general physician fails to refer a patient to a specialist when appropriate, the physician is held to the standard of care of a specialist, and the instruction included a statement that "[f]ailure to refer a patient to a specialist will not of itself constitute negligence." Because both Dr. Fodden and Dr. Martins testified that the defendant doctors should have consulted or referred the patient to a specialist, the instruction did not distort the nature of Koch's cause of action.

We conclude the instructions fairly and correctly state the law. The district court did not err in its jury instructions.

■ The clinic's third argument is that the district court erred in refusing remittitur for the jury's past and future pain and emotional distress awards. The district court retains a large degree of discretion in deciding whether to grant or deny a remittitur. *Hanson v. Chicago, Rock Island & Pac. R.R.,* 345 N.W.2d 736, 739 (Minn.1984). When the district court grants remittitur, or refuses to grant it, and states its reasons, it is unlikely that an appellate court will alter that decision. *Sorenson v. Kruse,* 293 N.W.2d 56, 62 (Minn.1980).

■ The jury awarded Koch $260,000 for past pain, disability, and emotional distress. It awarded $790,000 for future pain, disability, emotional distress, and lost earning capacity. The district court observed that the bills for hospital care alone amounted to $123,751. Moreover, the injuries from the brain damage were extensive. This disease has affected Koch's personality, physical abilities, intellect, chosen career, and lifestyle. The district court did not abuse its discretion in refusing remittitur.

We reject Koch's argument that the clinic's posttrial motions were untimely. Notice of a motion for a new trial or judgment notwithstanding the verdict must be served "within 15 days after a general verdict or service of notice by a party of the filing of the decision or order * * *." Minn.R.Civ.P. 59.03; Minn. R.Civ.P. 50.02. Koch served a notice of the filing of the district court's final order on August 25, 1994. The clinic served its posttrial motions on September 9, 1994, within the next fifteen days. The clinic's posttrial motions were timely served.

## III

■ Koch argues that the district court erred in offsetting the $119,826 paid by Medica/PHP from the jury award for past medical expenses because ERISA preempts Minn. Stat. § 548.36 and so the clinic's claim must fail. We review this issue of law de novo. *Hubred v. Control Data Corp.,* 442 N.W.2d 308, 310 (Minn.1989). The district court did not address the preemption issue but held that "any subrogation right was not raised in a timely manner."

■ The scope of ERISA preemption is broad. *FMC Corp. v. Holliday,* 498 U.S. 52, 57–58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). The ERISA statute expressly states it "shall supersede any and all state laws * * * relat[ing] to any employment benefit plan." 29 U.S.C. § 1144(a) (1985 & Supp. 1995). A state law relates to an employee benefit plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983).

■ Section 548.36 has both a reference and a connection to benefit plans governed by ERISA. It broadly defines "collateral source" as payments made on a plaintiff's behalf by "a contract or agreement of a group * * * to provide, pay for, or reimburse" a plaintiff's health care costs. Minn. Stat. § 548.36, subd. 1(3) (1994). Because the statutory definition of collateral source lists elements that define an ERISA plan, the statute refers to such a plan. Section 548.36 also has a connection to ERISA benefit plans. After a determination of liability, a court must reduce the award by the amounts of collateral source payments made to a plaintiff, excluding payments "for which a subrogation right has been asserted." Minn. Stat. § 548.36, subds. 2, 3. This language

connects collateral source offsets to subrogation claims arising under ERISA benefits plans.

Because section 548.36 has both a reference and a connection to ERISA benefit plans, we conclude ERISA preempts the application of section 548.36 to the Medica/PHP plan. The clinic's claim that Medica/PHP untimely filed its subrogation interest thus fails.

 The clinic argues that because section 548.36 does not conflict with ERISA, it is not preempted by ERISA. We disagree. ERISA preemption does not require a conflicting state law. 29 U.S.C. § 1144(a). A conflict, nonetheless, emerges on the facts of this case. Section 548.36 requires an ERISA plan to "assert" its subrogation right. Minn.Stat. § 548.36, subd. 2(1). But ERISA plan contracts, like the one at issue, may specify that a subrogation right arises "[u]pon providing coverage * * *." In these circumstances the ERISA contract and section 548.36 may conflict on when a subrogation interest is valid and enforceable. This conflict illustrates a purpose of ERISA preemption, to avoid changing a national plan to conform to varying state regulations. *FMC Corp.*, 498 U.S. at 59–60, 111 S.Ct. at 408.

Because section 548.36 has both a reference and a connection to ERISA benefit plans, ERISA preempts it. We reinstate the $119,826 jury award for Koch's past medical expenses.

### DECISION

The district court acted within its discretion when it determined two doctors possessed sufficient practical experience to testify as medical malpractice experts. It did not err in its evidentiary and procedural rulings, or in its denial of remittitur. Because ERISA preempts section 548.36 as applied to the Medica/PHP plan, we modify the judgment to reinstate the $119,826 award for Koch's past medical expenses.

**Affirmed as modified.**