**Jason GILHOUSEN, Respondent,**

v.

**ILLINOIS FARMERS INSURANCE COMPANY, petitioner, Appellant.**

**No. C2–97–414.**

Supreme Court of Minnesota.

Aug. 13, 1998.

Louise Dovre Bjorkman, Doreen A. Mohs, Rider, Bennett, Egan & Arundel, LLP, Minneapolis, for appellant.

Pete Kasal, Keefe, Kasal & Newman, Hutchinson, for respondent.

OPINION

TOMLJANOVICH, Justice.

This appeal presents the question of whether the Employee Retirement Income Security Act of 1974 (ERISA) preempts Minnesota's collateral source statute, Minn. Stat. § 548.36 (1996), to the extent it excepts amounts to which a subrogation right has been claimed. We conclude that there is no preemption, because the collateral source statute does not "relate to" employee benefit plans, 29 U.S.C. § 1144(a) (1994) (amended 1996), as that phrase has been construed by the United States Supreme Court. We reverse and remand for further consideration by the court of appeals.

In the early morning hours of May 16, 1993, respondent Jason Gilhousen attended a party just outside of Hutchinson. Partygoers, including Gilhousen, parked their cars side-by-side on a stretch of mown grass near the houses where the party was held. Gilhousen left the party, lay down on the grass in front of his parked car, and fell asleep. He awakened to the sound of a car driving toward him, and before he could move out of the way, the car ran over him and dragged his body 10 to 15 feet. The driver did not stop and never was identified.

Gilhousen sustained a closed fracture to his upper right arm, a contusion to his right thigh, an abrasion to his chest, and broken blood vessels and tenderness in his upper left arm. He underwent a surgery in which pins were placed in his right arm and two subsequent surgeries in which doctors treated an infection in the fractured bone. Gilhousen's employer, Hutchinson Technology, Inc. (HTI), paid medical and disability benefits on his behalf pursuant to a plan governed by ERISA, 29 U.S.C. §§ 1001–1461 (1994) (amended 1996).

When appellant Illinois Farmers Insurance Co. refused to pay Gilhousen any benefits under the uninsured motorist provisions of his auto policy, Gilhousen sued the insurer for past and future medical expenses, pain and suffering, and lost earning capacity. A

jury found that the unidentified motorist was 80 percent responsible for Gilhousen's injury and found total damages of $140,640.05. Illinois Farmers moved the district court to reduce the award, pursuant to Minnesota's collateral source statute, Minn.Stat. § 548.36, by the amount of HTI's payments to Gilhousen.[1]

In response, Gilhousen provided an affidavit from HTI's ERISA plan administrator, in which HTI asserted its right as subrogee to the medical and disability benefits it had paid. HTI based its position on this provision of the employee benefit plan:

> If the [p]lan pays benefits for medical or dental expenses you * * * incur[ ] as a result of any act of a third party for which the third party is or may be liable and you * * * later obtain a recovery, in whole or in part, from a third party or its insurer, for past, present, or future expenses, you are obligated to reimburse the [p]lan for the benefits paid. The [p]lan will be reimbursed in full before payment of any other existing claims, including any claim by you for general or special damages, regardless of whether you have been fully compensated for your damages by any such third party. The [p]lan has the right to recover all such expenses or benefits paid to you or on your behalf from (1) any third party allegedly responsible for the costs of Health Services provided to you by the [p]lan; or from (2) the total amount of any settlement or judgement obtained by you from such third party.

According to the plan administrator, HTI "has interpreted that provision as requiring * * * participants to reimburse the plan from payments that they receive from any third party, including first[-]party insurance coverage, such as underinsured motorist or uninsured motorist insurance coverage."

The district court held that this interpretation constituted an abuse of the discretion HTI possessed as the plan's claims administrator, because there was no evidence HTI previously had interpreted the plan in this

manner and because the plan was internally inconsistent in its usage of the term "third party." The court concluded that HTI was not subrogated to Gilhousen's rights against Illinois Farmers, and it applied the collateral source statute to reduce the amount awarded Gilhousen to $68,582.92.

Gilhousen appealed to the Minnesota Court of Appeals, which reversed and remanded in part. The court of appeals held, *inter alia*, that ERISA preempts the collateral source statute, and it remanded the matter to the district court for recalculation of Gilhousen's damages. The court relied upon its prior decision in *Koch v. Mork Clinic, P.A.*, in which it opined that Minn.Stat. § 548.36 defines collateral source by "list[ing] elements that define an ERISA plan" and "connects collateral source offsets to subrogation claims arising under ERISA benefits plans." 540 N.W.2d 526, 531–32 (Minn.App.1995) *Pet. for rev. denied* (Minn., Jan. 12, 1996). Thus, the court concluded, ERISA preempts the statute. *See id.* at 532. The court of appeals observed that while section 548.36 requires an ERISA plan to assert its subrogation right, the plan contract might specify that its subrogation right arises "upon providing coverage." *Id.* In the court's view, a plan contract and the statute thus "may [impermissibly] conflict on when a subrogation interest is valid and enforceable." *Id.* Because this issue presents a question of law, we review it de novo. *See Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989).

■ ERISA provides that it "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" governed by the act. 29 U.S.C. § 1144(a) (1994) (amended 1996). The Supreme Court has construed the phrase "relate to" broadly, because Congress rejected a preemption clause that would have applied only to those state laws governing the specific subjects addressed by ERISA. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98–99, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Ac-

---

1. In pertinent part, the collateral source statute provides that upon a defendant's motion, a trial court may reduce the award by the amount of health or income disability benefits received by the plaintiff pursuant to an insurance plan, "except those for which a subrogation right has been asserted." Minn.Stat. § 548.36, subd. 2 (1996).

cordingly, the Court has stated that a law "relate[s] to" an ERISA plan "if it has a connection with or reference to such a plan." *Id.* at 96–97, 103 S.Ct. 2890.

At first blush, the "connection with or reference to" standard seems as vague as the "relate to" language of ERISA's preemption provision. However, the United States Supreme Court has had myriad opportunities to apply this standard, and a relatively clear pattern emerges from the Court's decisions. *Compare, e.g., California Div. Of Labor Standards Enforcement v. Dillingham Constr., N.A.,* 519 U.S. 316, 117 S.Ct. 832, 838–41, 136 L.Ed.2d 791 (1997) (concluding that ERISA did not preempt statute which permitted public works contractors to pay lower-than-prevailing wages to trainees in approved apprenticeship programs; noting that "the apprenticeship portion of the prevailing wage statute [did] not bind ERISA plans to anything"), *and Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 6–7, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) (concluding that ERISA did not preempt statute which required employers to provide a onetime severance payment to employees in the event of a plant closing; reasoning that "the statute neither establishe[d], nor require[d] an employer to maintain, an employee welfare benefit 'plan' under [ERISA]"), *with, e.g., Boggs v. Boggs,* 520 U.S. 833, 117 S.Ct. 1754, 1760–62, 138 L.Ed.2d 45 (1997) (holding that a community property law, which allowed a nonparticipant spouse to make a testamentary transfer of undistributed pension plan benefits, "conflict[ed] with the provisions of ERISA or operate[d] to frustrate its objects"), *and District of Columbia v. Greater Wash. Bd. of Trade,* 506 U.S. 125, 130–31, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992) (concluding that ERISA preempted a provision requiring employers in the District of Columbia, who provided health insurance to their employees, to provide equivalent coverage to injured employees who were eligible for workers' compensation benefits; noting that provision expressly referred to ERISA welfare benefit plans), *and Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 140, 142–45, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (holding that ERISA preempted common-law action for unlawful discharge, in which the plaintiff alleged that the employer fired him to avoid having to contribute to or pay benefits under a pension plan governed by ERISA; reasoning that the existence of an ERISA plan was a critical element of the cause of action and that the cause of action was in conflict with a similar, exclusive cause of action under ERISA), *and Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 830, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) (holding that ERISA preempted a portion of garnishment statute, which expressly exempted from garnishment funds or benefits received pursuant to ERISA employee benefit plans).

The Court perhaps best described the "connection and reference" standard in the recent *Dillingham Construction* decision:

> Where a State's law acts immediately and exclusively upon ERISA plans, as in [the express statutory reference to ERISA in] *Mackey,* or where the existence of ERISA plans is essential to the law's operation, as in *Greater Washington Bd. of Trade* and *Ingersoll–Rand,* that "reference" will result in preemption.
>
> A law that does not refer to ERISA plans may yet be pre-empted if it has a "connection with" ERISA plans. * * * [T]o determine whether a state law has the forbidden connection, we look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans.

*Dillingham Construction,* 117 S.Ct. at 838 (citations and internal quotation omitted). In the Court's view,

> ERISA's pre-emption provision was prompted by recognition that employers establishing and maintaining employee benefit plans are faced with the task of coordinating complex administrative activities. A patchwork scheme of regulation would introduce considerable inefficiencies in benefit program operation, which might lead those employers with existing plans to reduce benefits, and those without such plans to refrain from adopting them. * * *

\* \* \* Congress intended pre-emption to afford employers the advantages of a uniform set of administrative procedures governed by a single set of regulations. *This concern only arises, however, with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation.*

*Fort Halifax Packing,* 482 U.S. at 11, 107 S.Ct. 2211 (emphasis added).

The cases cited by Gilhousen are inapposite because they analyze statutes that attempted to limit or restrict ERISA plan administrators' subrogation rights or to mandate that certain features be incorporated into ERISA plans; these statutes rightfully were found to be preempted by ERISA. *See, e.g., FMC Corp. v. Holliday,* 498 U.S. 52, 58–61, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990) (holding that ERISA preempted application of a statute prohibiting reimbursement to an employer's self-funded health care plan from a employee-plaintiff's tort recovery; noting that the "antisubrogation law prohibit[ed] plans from being structured in a manner requiring reimbursement in the event of recovery from a third party"). In contrast to these cases, and in contrast to the cases in which the Supreme Court has found preemption, Minnesota's statute does not impose any administrative or operational requirements upon ERISA plans. Its aim is merely to prevent plaintiffs from "double-dipping," by collecting damages from defendants for which they already have been compensated. *Cf. Blue Cross & Blue Shield of Fla., Inc. v. Matthews,* 498 So.2d 421, 422 (Fla.1986) (holding that collateral source statute did not bar subrogation rights of the ERISA plan insurer, thus mooting the preemption issue).

This conclusion is bolstered by the Supreme Court's *Mackey* opinion. After deciding that the express ERISA exemption in Georgia's garnishment statute was preempted, the Court considered whether the general provisions of the statute were preempted as well. *See generally Mackey,* 486 U.S. at 830–40, 108 S.Ct. 2182. In holding that ERISA did not preempt the statute's operation as to employee welfare benefits, the Court observed that ERISA preempts state statutes that affect *plans,* not the plan *benefits* that are owing a debtor-participant. *See id.* at 836–38, 108 S.Ct. 2182.[2]

Likewise, the impact of Minnesota's collateral source statute may affect benefits, not plans, and bears most directly upon the employee-plaintiff, not the employer-provider of benefits. The employer remains free to assert a subrogation interest in any sums it pays on behalf of an employee who is injured by virtue of a non-work-related tort. It may choose to pursue those claims against the tortfeasor or an insurer directly, or it may, as HTI did in this case, wait until the employee has recovered judgment to assert its subrogation interest.

■ Accordingly, we hold that ERISA does not preempt the collateral source statute, and we reverse the decision of the court of appeals. In addition, we remand to the court of appeals the issue of whether the plan administrator's interpretation of the plan's subrogation provisions constituted an abuse of discretion.[3]

**2.** Three of the Court's members dissented from this aspect of the opinion, but they did so for reasons that do not bear upon this court's analysis. *See Mackey,* 486 U.S. at 841–46, 108 S.Ct. 2182. In the dissenters' view, "state garnishment laws necessarily relate to employee benefit plans to the extent they require such plans to act as garnishees, which is a substantial and onerous obligation." *Id.* at 842, 108 S.Ct. 2182. In contrast, Minnesota's collateral source statute does not impose any greater burden upon the ERISA plan administrator than the administrator

already has assumed by including a subrogation provision in the plan.

**3.** *Compare, e.g., Wendy's Int'l, Inc. v. Karsko,* 94 F.3d 1010, 1013 (6th Cir.1996) (holding that uninsured motorist insurer was "third party" within meaning of ERISA plan), *and Rhodes, Inc. v. Morrow,* 937 F.Supp. 1202, 1213–14 (M.D.N.C. 1996) (holding that provider of underinsured motorist coverage could reasonably be considered "third party" under language of plan), *and Cutting v. Jerome Foods, Inc.,* 820 F.Supp. 1146,

1155 (W.D.Wis.1991) (concluding that "third party" "include[d] any entity that [was] not a party" to the ERISA plan, including the employee's uninsured motorist carrier), *with, e.g., Kennedy v. Georgia–Pacific Corp.*, 31 F.3d 606, 609–10 (8th Cir.1994) (determining that the term "third party" in the ERISA plan could not reasonably be interpreted to include the injured employee's underinsured motorist carrier), *and Employers Health Ins. v. General Cas. Co.*, 161 Wis.2d 937, 469 N.W.2d 172, 177–78 (1991) (holding that uninsured motorist insurer could not be deemed a "responsible third party" within language of health plan or uninsured motorist statute).