Thomas V. ENGFER, Relator,

v.

GENERAL DYNAMICS ADVANCED
INFORMATION SYSTEMS,
INC., Respondent,

Department Of Employment And
Economic Development,
Respondent.

No. A13–0872.

Court of Appeals of Minnesota.

March 17, 2014.

Howard L. Bolter, Fishman, Carp, Bescheinen, Bolter & Van Berkom, Ltd., Minneapolis, MN, for relator.

Patrick Martin, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Minneapolis, MN, for respondent General Dynamics.

Lee B. Nelson, Christine Hinrichs, Minnesota Department of Employment and Economic Development, St. Paul, MN, for respondent Department.

Considered and decided by HALBROOKS, Presiding Judge; STONEBURNER, Judge; and SCHELLHAS, Judge.

## OPINION

STONEBURNER, Judge.

Relator appeals by writ of certiorari from the determination of an unemployment-law judge (ULJ) that benefits relator received under an employer's ERISA-governed plan to supplement unemployment benefits constituted "wages," making relator ineligible for unemployment benefits he received in weeks that he also received such "wages" in an amount that equaled or exceeded his weekly unemployment benefits, resulting in overpayment of unemployment benefits in the amount of $10,746. Relator asserts that because ERISA preempts Minnesota law relating to or connected with ERISA-governed benefit plans, the ULJ erred by applying Minnesota law to reduce (or eliminate) supplemental unemployment benefits provided under his employer's supplemental-unemployment-benefit plan. We agree and therefore reverse.

## FACTS

When relator Thomas V. Engfer was laid off by his employer, he elected to participate in an Employee Transition Benefit (ETB) plan established by his employer and designed to supplement state unemployment benefits. Based on a formula established in the plan, Engfer would receive an ETB benefit which, when added to his unemployment benefits, would equal 100% of his last normal weekly gross pay for the number of weeks established by the ETB plan. Under the ETB plan, Engfer was required to apply for state unemployment benefits and, once found eligible for those benefits, contact the ETB benefit-management firm on a weekly basis to inform the firm of his continued eligibility for state unemployment compensation.

The ETB plan paid supplemental benefits at 100% of Engfer's last weekly pay during the one-week "waiting period" that unemployment benefits are not paid. The ETB plan also provided that, in some circumstances not relevant here, ETB benefits could also continue after eligibility for unemployment benefits ended.

Engfer established a benefit account with the Minnesota Department of Employment and Economic Development (DEED) in December 2011. He received $597 per week in state unemployment benefits and $2,369.26 bi-monthly in ETB benefits for approximately 26 weeks. Engfer's ETB benefits ended before his eligibility for unemployment benefits expired.

In January 2013, DEED determined that because Engfer's ETB plan paid benefits during weeks when he was not receiving unemployment benefits, his ETB-plan benefits were not exempt from the definition of wages, making Engfer ineligible for unemployment benefits during weeks in which he had been paid ETB benefits. This determination was based on Minn. Stat. § 268.085, subd. 3(a)(2) (2012), which provides that an applicant is not eligible to receive unemployment benefits for any

week that he or she receives payments that are considered wages, pursuant to Minn.Stat. § 268.035, subd. 29, equal to or in excess of the applicant's weekly unemployment benefit amount. DEED notified Engfer that he had been overpaid unemployment benefits in a substantial amount.

Engfer appealed, and the ULJ ruled that Engfer's ETB benefits are not exempt from the definition of wages under Minn.Stat. § 268.035, subd. 29(a), because the ETB plan "pays the participant's full weekly wage during a state-imposed non-payable week, [and provides for payment of] benefits in the full amount of the participant's weekly wage if the participant exhausts his unemployment compensation eligibility" before exhausting ETB benefits.[1] The ULJ relied on language added to Minn.Stat. § 268.035, subd. 29(a)(12), in 2011, providing that in order for payments under an employer's supplemental-unemployment-benefit plan to be exempt from the definition of wages, "[t]he plan must provide supplemental payments only for those weeks the applicant has been paid regular, extended, or additional unemployment benefits."[2] Because the ULJ determined that Engfer's ETB benefits amounted to "wages," the ULJ further concluded that Engfer was not entitled to state unemployment benefits for any weeks in which the ETB plan's supplemental benefits had equaled or exceeded the unem-

ployment benefits, resulting in an overpayment of unemployment benefits in the amount of $10,746.[3]

Engfer requested reconsideration. He did not challenge the ULJ's conclusion that, under Minnesota law, the ETB plan disqualified his benefits from being exempt from the definition of "wages," but he questioned the validity of the ETB plan under ERISA, which governs the plan, noting that the plan did not provide that he would have to repay the unemployment benefits, and the ULJ's ruling substantially reduced the amount of benefits he received under the ETB plan.

The ULJ affirmed the determination of ineligibility and overpayment, concluding that the validity of the ETB plan under ERISA is irrelevant to the determination of whether the provisions of the plan affected Engfer's eligibility for state unemployment benefits. This certiorari appeal followed. Although Engfer did not specifically argue to the ULJ that ERISA preempts the provision in the state law that disqualified his ETB plan benefits from exemption from the definition of wages, DEED concedes that the reference to ERISA sufficiently preserved that issue for appeal.

## ISSUE

Does 29 U.S.C. § 1144(a) (2012) (ERISA's preemption provision)

---

1. The ULJ also disqualified the plan benefits for exemption from the definition of "wages" because the plan provides for employees who do not have sufficient earnings to qualify for unemployment benefits. This provision is not relevant to this appeal because Engfer had sufficient earnings to qualify for unemployment benefits.

2. Neither party provided, nor could we find, any legislative history explaining why this provision was added to the unemployment law in 2011.

3. In this case, Engfer received benefits under the ETB plan, and the record does not reflect that the plan is attempting to recover those benefits paid to him. But had DEED determined Engfer's ineligibility for state unemployment benefits before any ETB benefits were paid, under the terms of the plan, which is premised on eligibility and receipt of state unemployment benefits, he would not have been entitled to any ETB benefits such that the plan would have been worthless, and Engfer would not have received the very benefits that made him ineligible for unemployment benefits.

preempt the provision in Minn.Stat. § 268.035, subd. 29(a)(12), mandating that supplemental-unemployment-benefit plans must "provide supplemental payments only for those weeks the applicant has been paid regular, extended, or additional unemployment benefits," in order for such ERISA-governed supplemental-unemployment benefits to be exempt from the definition of "wages" for the purpose of determining eligibility for state unemployment benefits?

### ANALYSIS

"Whether federal law preempts state law is primarily an issue of statutory interpretation, which we review de novo." *In re Estate of Barg*, 752 N.W.2d 52, 63 (Minn.2008). We may reverse or modify a ULJ's decision that is affected by error of law. Minn.Stat. § 268.105, subd. 7(d)(4) (2012). "An appellate court will exercise its own independent judgment in analyzing whether an applicant is entitled to unemployment benefits as a matter of law." *Irvine v. St. John's Lutheran Church of Mound*, 779 N.W.2d 101, 103 (Minn.App. 2010).

Whether ERISA preempts a state law turns on Congress's intent in enacting the ERISA preemption clause. *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995). When it is asserted that the federal law bars state action in areas of traditional state regulation, reviewing courts assume that state laws are not superseded by a federal act unless that result is "the clear and manifest purpose of Congress." *Id.* at 655, 115 S.Ct. at 1676 (quotation omitted).

DEED does not dispute that Engfer's ETB plan is an "employee benefit plan," as defined in 29 U.S.C. § 1002(3) (2012) and is governed by ERISA. ERISA provisions, with exceptions not relevant in this case, "supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan" governed by ERISA, 29 U.S.C. § 1144(a) (emphasis added).

DEED argues that Minn.Stat. § 268.035, subd. 29(a)(12), defining exemptions from the definition of "wages" for purposes of state unemployment-benefit eligibility, does not "relate to" an employee-benefit plan within the meaning of the ERISA's preemption provision. We disagree.

The United States Supreme Court, in *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A.*, noted that "[s]ince shortly after its enactment, we have endeavored with some regularity to interpret and apply the 'unhelpful text' of ERISA's pre-emption provision." 519 U.S. 316, 324, 117 S.Ct. 832, 837, 136 L.Ed.2d 791 (1997) (citation omitted).

> Our efforts at applying the provision have yielded a two-part inquiry: A law 'relate[s] to' a covered employee benefit plan ... if it [1] has a connection with or [2] reference to such a plan.
>
> . . . .
>
> A law that does not refer to ERISA plans may yet be pre-empted if it has a "connection with" ERISA plans.

*Id.* at 324–25, 117 S.Ct. at 837–38 (quotations omitted); *see also Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983) ("A law 'relates to' an employee benefit plan, in the normal sense of the phrase if it has a connection with or reference to such a plan").

Subsequent cases have recognized that this construction of the phrase "relate to" does not necessarily end the inquiry. *See Travelers Ins. Co.*, 514 U.S. at 656, 115

S.Ct. at 1677 (stating that the Court "must go beyond the unhelpful text [of the ERISA preemption provision] and the frustrating difficulty in defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive.").

The United States Supreme Court has identified Congress's intent in passing ERISA:

> to ensure that plans and plan sponsors would be subject to a uniform body of benefits law ... to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government ..., [and to prevent] the potential for conflict in substantive law ... requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction.

*Id.* at 656–57, 115 S.Ct. at 1677 (alteration in original) (quoting *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 142, 111 S.Ct. 478, 484, 112 L.Ed.2d 474 (1990)).

DEED argues that Minn.Stat. § 268.035, subd. 29(a)(12), merely defines the parameters for eligibility for state unemployment benefits, and "state laws which have only an indirect economic influence on ERISA-governed plans, ... do not bind plan administrators in a particular way, preclude uniform administrative practice, or preclude provision of a uniform interstate benefit package, do not 'relate to' ERISA plans within the meaning of section 1144(a)" and are not preempted. *Hewlett–Packard Co. v. Diringer*, 42 F.Supp.2d 1038, 1044 (D.Colo.1999) (holding that a Colorado statute governing the definition of wages for purposes of calculating workers' compensation benefits was not preempted by ERISA). But *Diringer* also states, in relevant part, that "state laws which mandate employee-benefit

structure ... 'relate to' ERISA plans and, consequently, are preempted." *Id.* (citing *Travelers Ins. Co.*, 514 U.S. at 657–58, 115 S.Ct. at 1678 (1995)).

*Diringer* addressed whether benefits paid under an ERISA-governed employee-benefit plan should be included in calculating an employee's average weekly wage under Colorado's workers' compensation law, which did not make any plan provisions determinative of the issue. *Id.* at 1040. Similarly, the Minnesota Supreme Court concluded that provisions in Minnesota's collateral-source statute, Minn.Stat. § 548.36 (1996), which result in benefits paid under an ERISA-governed benefit plan being treated as a collateral source, are not preempted because the challenged statute dealt with treatment of benefits paid and does not mandate that any features be incorporated into an ERISA plan. *Gilhousen v. Ill. Farmers Ins. Co.*, 582 N.W.2d 571, 575 (Minn.1998) (acknowledging that state statutes that attempt "to mandate that certain features be incorporated into ERISA plans" are rightfully found to be preempted by ERISA).

The Supreme Court recognized in *Travelers Ins. Co.*, that ERISA does not only preempt direct regulation of ERISA plans:

> a state law might produce such acute, albeit indirect, economic effects, by intent or otherwise, as to force an ERISA plan to adopt a certain scheme of substantive coverage ... that such a state law might indeed be preempted under [29 U.S.C. § 1144(a)].

514 U.S. at 668, 115 S.Ct. at 1683.

Minn.Stat. § 268.035, subd. 29(a)(12), specifically references "a plan established by an employer, that makes provisions for employees generally," which, the parties agree, includes Engfer's ERISA-governed ETB plan. The subdivision mandates that the supplemental benefits provided by

such a plan are not exempt from the definition of "wages" if the plan provides benefits in any week that the applicant is not paid unemployment benefits. Minn.Stat. § 268.035, subd. 29(a)(12). This mandate has the effect of coercing ETB plans to adopt a "certain scheme of substantive coverage" in order to provide supplemental-unemployment benefits in Minnesota that will not be deducted as "wages," thereby diluting or eliminating the benefits intended by the plan. *Travelers Ins. Co.*, 514 U.S. at 668, 115 S.Ct. at 1683. This effect on substantive benefits illustrates a conflict between the state law and a fundamental aim of ERISA preemption: "to avoid changing a national plan to conform to varying state regulations." *Koch v. Mork Clinic, P.A.*, 540 N.W.2d 526, 532 (Minn.App.1995) (citing *FMC Corp. v. Holliday*, 498 U.S. 52, 59–60, 111 S.Ct. 403, 408, 112 L.Ed.2d 356 (1990)), *review denied* (Minn. Jan. 12, 1996). The reference to, the connection with, and the effect upon ERISA-governed plans bring the challenged provision in Minn.Stat. § 268.035, subd. 29(a)(12), squarely within the case law's description of the type of statute preempted by ERISA. *Dillingham*, 519 U.S. at 324–25, 117 S.Ct. at 837–38. Whether characterized as referencing, having a connection with, requiring tailoring of plans to fit state law, or forcing a plan to adopt a certain scheme of substantive coverage, we conclude that the challenged provision is the type of provision that Congress intended to be preempted by ERISA.

## DECISION

Because Minn.Stat. § 268.035, subd. 29(a)(12), purports to mandate the terms of the ERISA-governed ETB supplemental-unemployment-benefit plan in order for the plan to provide the intended benefits, the provision requiring that a "plan must provide supplemental payments only for those weeks the applicant has been paid regular, extended, or additional unemployment benefits" in order to be exempt from the definition of "wages" is preempted by ERISA under 29 U.S.C. § 1144(a).

**Reversed.**

SCHELLHAS, Judge (dissenting).

I respectfully dissent from the majority's conclusion that the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1144(a) (2012), preempts Minn.Stat. § 268.035, subd. 29(a)(12) (2012).

The apparent purpose of section 268.035, subdivision 29(a)(12), is to allow employers to offer their laid-off employees supplemental unemployment benefits (SUB) payments that are not characterized as wages. For a SUB plan to provide payments that are not considered wages under section 268.035, subdivision 29(a)(12), the plan "must provide supplemental payments solely for the supplementing of weekly state or federal unemployment benefits." In addressing this exemption in regard to a state disability insurance law, the Supreme Court explained that

> while the State may not require an employer to alter its ERISA plan, it may force the employer to choose between providing disability benefits in a separately administered plan and including the state-mandated benefits in its ERISA plan. If the State is not satisfied that the ERISA plan comports with the requirements of its disability insurance law, it may compel the employer to maintain a separate plan that does comply.

*Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 108, 103 S.Ct. 2890, 2906, 77 L.Ed.2d 490 (1983). The Minnesota legislature has chosen to exclude SUB payments from

wages only if the SUB plan comports with section 268.035, subdivision 29(a)(12).

In this case, the unemployment-law judge (ULJ) noted that the plan

pays the participant's full weekly *wage* during a state imposed nonpayable week, it continues to pay benefits in the full amount of the participant's weekly *wage* if the participant exhausts his unemployment compensation eligibility, and it also pays benefits to the participant if he does not have sufficient earnings to qualify for unemployment.

(Emphasis added.) The ULJ decided that Engfer was ineligible to receive unemployment benefits and is responsible for an overpayment because the SUB payments he received under the Employee Transition Benefit (ETB) plan were wages because they did not meet the requirements of section 268.035, subdivision 29(a)(12)— they exceeded the amount of Engfer's weekly unemployment benefits. I agree.

Engfer's argument that ERISA preempts Minn.Stat. § 268.035, subd. 29(a)(12), is unpersuasive. ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a) (2012). The analysis of whether ERISA preempts Minn.Stat. § 268.035, subd. 29(a)(12), must begin "with the starting presumption that Congress does not intend to supplant state law." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654, 115 S.Ct. 1671, 1676, 131 L.Ed.2d 695 (1995). The preemption provision is not of infinite scope and the objectives of ERISA must be a guide to the scope of the state law that can survive preemption. *Id.* at 656, 115 S.Ct. at 1677. The question of preemption turns on whether Minn.Stat. § 268.035, subd. 29(a)(12), relates to the

ERISA plan by connecting with or referring to ERISA. *See Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 324, 117 S.Ct. 832, 837, 136 L.Ed.2d 791 (1997).

Section 268.035, subdivision 29(a)(12), does not explicitly refer to ERISA, nor is the existence of ERISA plans essential to its operation, and therefore the state law cannot be preempted on these grounds. *See id.* at 325, 117 S.Ct. at 838. But even a state law that does not refer to ERISA plans may be preempted if it has a "connection with" ERISA plans. *Id.* A state law that produces "such acute, albeit indirect economic effects, by intent or otherwise, as to force an ERISA plan to adopt a certain scheme of substantive coverage" might be subject to preemption under 29 U.S.C. § 1144(a). *Travelers Ins. Co.*, 514 U.S. at 668, 115 S.Ct. at 1683.

ERISA exempts an employee benefit plan from its provisions if the plan "is maintained solely for the purpose of complying with applicable [workers'] compensation laws or unemployment compensation or disability insurance laws." 29 U.S.C. § 1003(b)(3) (2012); *see* 29 U.S.C. § 1144(a) (providing that ERISA suspends state law related to employee benefit plans if not exempt under section 1003(b)). An ETB plan offering SUB payments that satisfy section 1003(b)(3) would be exempt from ERISA. But no record evidence indicates whether the subject ETB plan is, as section 1003(b)(3) requires, maintained "*solely* for the purpose of complying with applicable [workers'] compensation laws or unemployment compensation or disability insurance laws." (Emphasis added.)

The preemption analysis will continue with an examination of whether the indirect economic effects of section 268.035, subdivision 29(a)(12), impermissibly force the ETB ERISA plan to adopt a scheme of substantive coverage. *See Travelers Ins.*

Co., 514 U.S. at 668, 115 S.Ct. at 1683. The indirect economic effects are that SUB payments made by an employer pursuant to a plan that does not meet these statutory requirements, such as the ETB plan, are considered wages, and when they equal or exceed the applicant's weekly unemployment benefits, the applicant is ineligible for weekly unemployment benefits. Minn.Stat. § 268.085, subd. 3(a)(2).

An instructive preemption issue arose in *Hewlett–Packard Co. v. Diringer,* in which a state workers' compensation law required that employer-provided benefits, including benefits from an ERISA plan, must be included in the calculation of an employee's average weekly wage. 42 F.Supp.2d 1038, 1044–46 (D.Colo.1999). The federal court held that even though ERISA may sometimes preempt a state law that indirectly affects an ERISA-governed plan, the requirement that the value of benefits provided from ERISA-governed plans be included in the calculation of workers' compensation benefits did not implicate the congressional concerns behind the ERISA law as to "the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government" and therefore was not preempted by the law. *Id.* (quotation omitted).

Likewise, the Minnesota Supreme Court considered the somewhat similar issue of whether ERISA preempted the application of Minn.Stat. § 548.36 (1996), the collateral-source statute, under which a jury verdict in an uninsured motorist action was reduced, in relevant part, by payments from the insured's ERISA employee benefit plan. *Gilhousen v. Ill. Farmers Ins.*

Co., 582 N.W.2d 571, 572–73, 575 (Minn. 1998) (citing 42 U.S.C. § 1144(a) (1994)). The supreme court noted that "[i]n holding that ERISA did not preempt the statute's operation as to employee welfare benefits, the [Supreme] Court observed that ERISA preempts state statutes that affect *plans,* not the plan *benefits* that are owing a debtor-participant." *Id.* at 575 (citing *Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 836–38, 108 S.Ct. 2182, 2188–90, 100 L.Ed.2d 836 (1988)). The supreme court held that ERISA did not preempt the collateral-source statute because it did "not impose any administrative or operational requirements upon ERISA plans." *Id.* The aim of the collateral-source statute was "merely to prevent plaintiffs from 'double-dipping,' by collecting damages from defendants for which they already have been compensated." *Id.* The court emphasized that "the impact of Minnesota's collateral source statute may affect benefits, not plans, and bears most directly upon the employee-plaintiff, not the employer-provider of benefits." *Id.*

As in *Hewlett–Packard Co.* and *Gilhousen,* section 268.035, subdivision 29(a)(12), does not impose any administrative or operation requirements on the ETB plan. Nor does it force the ERISA plan to adopt a certain scheme of substantive coverage. *See Travelers Ins. Co.,* 514 U.S. at 668, 115 S.Ct. at 1683. Instead, as in *Hewlett–Packard Co.* and *Gilhousen,* it at most indirectly affects the ETB plan payments because receipt of payments from the ETB plan rendered Engfer ineligible for unemployment benefits.[4]

4. The record contains a document titled "General Dynamics Employee Transition Benefit Plan Frequently Asked Questions" that Engfer provided to the ULJ. It advised beneficiaries that if they encounter a problem in collecting state unemployment benefits, they should immediately contact General Dynamics's ETB plan administrator by calling a phone number listed on the document, stating that the administrator "can assist you in having your claim approved."

Although subdivision 29(a)(12) indirectly affects the ETB benefits received by Engfer, in that the receipt of payments under the ETB plan rendered Engfer ineligible for unemployment benefits, it does not affect the ETB plan itself. Instead, it bears most directly on Engfer, rather than the employer who provided the benefits through the ETB plan. *See Gilhousen,* 582 N.W.2d at 575. And, although the determination that the ETB payments are wages would result in an overpayment to Engfer, as the ULJ determined, no equitable or common-law denial or allowance of unemployment benefits exists under the law. Minn.Stat. § 268.069, subd. 3 (2012).

For all of the reasons discussed above, I would hold that section 268.035, subdivision 29(a)(12), is not preempted by ERISA.